(101 App. Div. 291)

PEOPLE ex rel. LOVETT v. MILLER, Comptroller, et al.

(Supreme Court, Appellate Division, Third Department. January 4, 1905.)

1. CERTIORARI—RETURN.
    The return to a writ of certiorari to review an officer's audit of a claim is to be regarded as the true statement of the facts relating to the audit.

2. CLAIM AGAINST STATE—AUDIT—KNOWLEDGE OF OFFICER.
    The Comptroller, in auditing a claim for services against the state, properly takes into account his personal knowledge as to the value of the services.

3. SAME—REVIEW.
    The audit by the Comptroller of a claim against the state for services at the same amount at which the Attorney General and the State Banking Department, whose duty it was to pass thereon, had fixed its value, will not be disturbed; they having acted in good faith, and experts having differed as to the values of the services.

4. SAME—AUDIT IN SINGLE ITEM.
    The audit in one item of a claim against the state by one employed to appraise several tracts of land and testify in regard thereto in a certain action is proper; there having been but one employment, for a single purpose; the testimony having all been given in one action, at one time; and on the audit the claimant having treated his claim as a single item, and all his testimony as to value being given in gross, and not in items.

Certiorari on the relation of George E. Lovett against Nathan L. Miller, Comptroller of the State, to review his audit of relator's claim against the state for services as an expert real estate appraiser. Determination of Comptroller confirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

William H. Good (William E. Kisselburgh, of counsel), for relator.

John Cunneen, Atty. Gen., and William H. Wood, Dep. Atty. Gen., for respondents.

· CHASE, J. In an action brought in the name of the people of the state of New York against the Republic Savings & Loan Association for the dissolution of the charter of said association by reason of alleged insolvency, the relator, George E. Lovett, an expert real estate appraiser, was employed by the Attorney General of the state of New York, on behalf of the people, to appraise 14 groups of real property in Kings county owned by said association, and as an expert witness upon the trial of said action. The relator was so employed on or about the 15th day of October, 1900, and he was sworn as a witness in the action on or about the 1st day of November, 1900. Between October 15 and November 1, 1900, the relator was engaged (but not exclusively) in the appraisal of said real estate, and in preparation for his examination as an expert witness. Subsequently he presented a bill in writing against the state of New York for such services, in which bill he charged for examination, appraisal, and testimony for each of said groups of real property $100, making a total bill of $1,400. By chapter 642, p. 1549, of the Laws of 1901, the Legislature made an appropriation "for extraordinary expenses of the Attorney General growing out of litigations involving the forfeiture of the charters of building and loan associations, the sum of two thousand and fifty dollars, or so much thereof as may be necessary to be paid by the Comptroller upon verified accounts audited by the Superintendent of Banks and the Attorney General." Said act also provides that the Treasurer shall pay the warrants of the Comptroller for the objects indicated in the act, but it is further expressly provided that "no warrants shall be issued except in cases of salaries until the amounts claimed shall have been audited and allowed by the Comptroller who is hereby authorized to determine the same." When relator's bill was presented to the Attorney General, he examined the same, and made inquiry in regard to the services rendered, and then marked the same, "Approved at $400," and signed the same in his official capacity. Thereafter the Deputy Superintendent of Banks, in the absence of the Superintendent, also marked the same, "Approved at $400," and signed the same in his official capacity. Subsequently the Comptroller, after hearing evidence on behalf of the relator and on behalf of the state, audited and allowed the bill at $400. It is to review the action of the Comptroller in auditing and allowing the bill at $400 that this writ of certiorari has been granted.

The relator claims that the Comptroller should have audited and allowed the bill at $1,400, as claimed by him, and that the Comptroller, in auditing and allowing the bill at $400, must have improperly considered and been influenced by information obtained by him apart from the testimony of witnesses sworn and examined on the hearing before him. Statements made by the Comptroller during the hearing are referred to by the relator as some evidence of his claim.

The return must be regarded as the true statement of the facts relating to the audit. People ex rel. McMillen v. Vanderpoel, 35 App. Div. 73, 54 N. Y. Supp. 436. By the return the Comptroller says:

"That upon the evidence presented and upon the knowledge of the respondent as to the value of such services, and upon the audit of such claim by the Attorney General and Banking Department of the state, the respondent audited the claim of the relator for the services performed by him at and for the sum of four hundred dollars, which amount the respondent adjudged to be fair and reasonable compensation for the services performed by the relator herein."

On the hearing before the Comptroller the relator was sworn, and testified that his services were worth $2,675. Three real estate appraisers were also sworn in his behalf, and they testified that the relator's services were worth from $2,190 to $2,350. A real estate appraiser sworn on behalf of the state testified that the relator's services were worth $10 for each piece of real property appraised, and $25 for each day actually engaged in court as an expert witness.

In the great majority of cases, claims against the state and municipal corporations are audited by officers or auditing boards without a formal hearing in the nature of a trial. In such cases it is usual for the auditing officer or board to obtain information in regard to the claim in an informal manner. It is said in People ex rel. Cochran v. Town Auditors, 74 Hun, 83, 26 N. Y. Supp. 122, in referring to town auditors:

"It is the habit of such bodies to seek information from any quarter where it is obtainable, and we presume the practice is legitimate. They must acquire knowledge to enable them to act with wisdom in subservience to established rules. They must act upon their own knowledge acquired by observation. Town assessors act in the same way respecting the valuation of property to be assessed."

We will assume that where a person presenting a claim for audit desires to be heard in relation thereto, and a formal hearing and trial is had before the auditing officer or board, such officer or board should not take into account information of particular facts relating to the claim received apart from the judicial hearing and trial, or at least should not consider and be influenced by information of particular facts received without the knowledge of the claimant, and without the claimant having an opportunity to cross-examine the informant or make answer to such information. It does not appear in this case that the Comptroller, in auditing the bill of the relator, took into account any information received by him of particular facts relating to the services performed, other than is shown by the evidence returned. It was clearly the duty of the Comptroller, in auditing the relator's claim, to take into account his personal knowledge as to the value of such services, and to exercise his judgment in fixing the amount of the audit. The experience, general knowledge, and good judgment of a person are the chief qualifications considered in selecting a person for an auditing officer or member of an auditing board.

In Head v. Hargrave, 105 U. S. 45, 26 L. Ed. 1028, the court, in discussing the province of the jury in weighing testimony, and in applying their own experience and knowledge in determining the value of services, say:

"It was the province of the jury to weigh the testimony of the attorneys as to the value of the services by reference to their nature, the time occupied in their performance, and other attending circumstances, and by applying to it their own experience and knowledge of the character of such services. To direct them to find the value of the services from the testimony of the experts

alone was to say to them that the issue should be determined by the opinions of the attorneys, and not by the exercise of their own judgment of the facts on which those opinions were given. The evidence of experts as to the value of professional services does not differ in principle from such evidence as to the value of labor in other departments of business, or as to the value of property. So far from laying aside their own general knowledge and ideas, the jury should have applied that knowledge and those ideas to the matters of fact in evidence in determining the weight to be given to the opinions expressed, and it was only in that way that they could arrive at a just conclusion. While they cannot act in any case upon particular facts material to its disposition resting in their private knowledge, but should be governed by the evidence adduced, they may, and, to act intelligently, they must, judge of the weight and force of that evidence by their own general knowledge of the subject of inquiry. If, for example, the question were as to the damages sustained by a plaintiff from a fracture of his leg by the carelessness of a defendant, the jury would ill-perform their duty, and probably come to a wrong conclusion, if, controlled by the testimony of the surgeons not merely as to the injury inflicted, but as to the damages sustained, they should ignore their own knowledge and experience of the value of a sound limb. Other persons besides professional men have knowledge of the value of professional services, and, while great weight should always be given to the opinions of those familiar with the subject, they are not to be blindly received, but are to be intelligently examined by the jury in the light of their own general knowledge."

Although the Comptroller acted judicially in auditing the claim, and this court has the power to review his decision upon the facts, his judgment should not be overruled unless it is clear that he has erred. People ex rel. Oppenheimer Publishing Co. v. Pople, 81 Hun, 383, 30 N. Y. Supp. 878.

The value of the relator's services has been considered and passed upon by different public officers, whose sworn duty required them to approve or audit the bill at an amount which is fair not only to the state, but to the relator; and, so long as such officers have acted in good faith in relation thereto, and there is a difference of opinion among experts as to the value of relator's services, the court should not direct the Comptroller to reaudit the claim. The audit is not erroneous and illegal by reason of its having been made in one item. Relator's employment was one employment, for one purpose. His testimony was given in one action, at one time, and on the hearing before the Comptroller he treated his claim as a single item, and all his testimony relating to the value thereof was given in gross, and not in items.

The determination of the Comptroller should be confirmed, with $50 costs and disbursements. All concur.